UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

DEBORAH FRANKLIN, )
as Administrator of the Estate of )
DANQUIRS FRANKLIN, )
 )
    Plaintiff, )
 )
    v. )
 )
CITY OF CHARLOTTE, )
WENDE KERL, individually and officially, )
 )
    Defendants. )
_____ )

**COMPLAINT**
(Jury-Trial Demanded)

The Plaintiff, complaining of the Defendants and seeking a jury trial, alleges and says:

**PARTIES**

1.    Plaintiff Deborah Franklin is a citizen and resident of Mecklenburg County and the duly appointed Administrator of the Estate of her deceased son, Danquirs "Duke" Franklin, who was shot dead by Defendant Wende Kerl on March 25, 2019.

2.    The decedent (hereinafter "Decedent" or "Franklin"), was 27 years old, the father of three young children who lived with him, and a citizen and resident of Mecklenburg County, North Carolina.

3.    Defendant City of Charlotte is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates pursuant to its charter a unified city-county police force called the Charlotte-Mecklenburg Police Department ("CMPD"). The City of Charlotte bears legal responsibility under state law for acts and omissions CMPD police officers in the course of their employment. Further, the City has expressly ratified the conduct of Defendant Kerl in this case.

4.    By ordinance adopted by its elected Council pursuant to N.C.G.S. § 160A-485.5, the City has waived its governmental immunity from the negligence of CMPD police

1

officers pursuant to the State Tort Claims Act. That waiver applies to the wrongful death claim and the claim for negligent training by the City. On that latter claim, the City has expressly ratified the conduct of Kerl as conforming to its training of her.

5. The City is also sued under 42 U.S.C. § 1983 for the violation of Franklin's Fourth Amendment rights. The City is a "person" for purpose of § 1983 and a corporate entity under state law. Its City Manager and Police Chief have expressly ratified the shooting of Decedent by Kerl, subjecting the City to liability under § 1983. That ratification was made under color of state law.

6. Upon information and belief, and at all relevant times to this action, the Defendant Wende Kerl was an adult citizen and resident of Mecklenburg County and was employed as a law enforcement officer with the CMPD. She is sued in her official capacity under state law for negligence in the wrongful death of Decedent and the City has waived governmental immunity as to that claim.

7. Alternatively, Kerl is sued in her individual capacity under state law for assault and battery for shooting and killing Franklin. Her conduct exceeded the scope of her lawful authority, was intentional and exhibited willful and wanton and reckless disregard for Franklin's rights and safety - killing him for following her instructions. Her conduct pierced any claim to public officer immunity she might invoke as to this individual capacity state law claim.

8. Kerl is also sued in her individual capacity under 42 U.S.C. § 1983 for using unwarranted deadly force to kill Franklin, violating his Fourth Amendment right to be free from unreasonable seizures. Kerl's actions were taken under color of state law and violated the federal constitution.

## JURISDICTION & VENUE

9. The Court had jurisdiction over the federal claims under 42 U.S.C. § 1988 and 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1331, as those claims arise under the same facts.

10. Venue is proper in this Court under 28 U.S.C. § 1391, as all parties reside, and the shooting at issue occurred, in the Western District and in the Charlotte Division.

## FACTS

11. Danquirs Franklin was born and raised in Mecklenburg County. He worked steadily after graduating from high school and was raising three children at the time of his death.

12. Franklin and the mother of his children had met and began dating when she was in middle school.

13. She became pregnant with their first child when she was a senior in high school.

14. They then had two more children and lived together as a family, with both parents working. For a year or more prior to his death, the mother worked days and Franklin worked nights so they could share childcare.

15. In the winter of early 2019, however, the mother revealed that she had fallen in love with a co-worker at her job at the Burger King on Beatties Ford Road.

16. Franklin became so distraught over this change in their lives that he voluntarily committed himself to the hospital for psychiatric care.

17. Franklin was released from the hospital after a short period of treatment and told the mother of his children that she could not remain in their home given her relationship with her co-worker.

18. They reached an agreement that the children would stay in the home with Franklin and the mother would come there in the evenings to watch the children while Franklin worked. But she would have to leave when Franklin came home.

19. On the morning of March 25, 2019, Franklin learned from one of his children that the mother's new boyfriend had come to the house with her that prior evening and had been in Franklin's bed having sex with the mother.

20. Franklin was so upset over this information that, after getting his oldest child off to school, he called Plaintiff, the grandmother of is children, to come get the other two children because that he was going to the Burger King to deal with the boyfriend. Plaintiff was on the bus, returning to the neighborhood after working early that morning in her job cleaning buildings when Franklin called her.

21. Franklin also called James Barnett, who was the father figure in his life. Barnett is married to Plaintiff's cousin and they had raised three sons and had helped raise Franklin, who was like a fourth son to him. Barnett also employed Plaintiff in his business.

22. Franklin told Barnett that he had learned the boyfriend had been in his bed with the mother of his children and that he was going to the Burger King to deal with him. Barnett tried to persuade Plaintiff not to go to the Burger King.

3

23. Franklin then walked to the Burger King with the other two children to confront the man who had wrecked Franklin's home-life and then had sex in Franklin's bed with the mother of his children.

24. Franklin had taken a pistol with him. When he got to the Burger King, he left his two children in the lobby and, as shown on store security video, went into the restaurant's kitchen and chased after the boyfriend, who ran throughout the kitchen and then outside to escape. Franklin chased him outside, pointed the gun at him but did not shoot.

25. While Franklin brandished the pistol at the the boyfriend he never fired any shots, even when he had clear aim at the boyfriend.

26. After Franklin chased the boyfriend of the property, he went back into the store.

27. The mother tried to plead with him to calm down and he angrily pushed her to ground.

28. Franklin put the gun away in his clothes. He went to the entrance doors of the store and punched at the door glass with both of his hands, crying out in anger.

29. One or more employees at the store had called 911 to report that a man was in the store with a gun, upset at one of the employees. A customer in the drive through line who had seen a man with a gun chasing someone had also called 911.

30. Defendant Kerl and Officer Larry Deal worked out of the CMPD precinct in that neighborhood. They got the call from a dispatcher and began to drive in separate vehicles toward the Burger King. They did not activate emergency lights or sirens.

31. A Burger King employee had also called the store manager, Timothy Grier, who was on his way to the store, his wife driving to drop him off for his shift.

32. Grier pulled up before the police arrived, and opened the front passenger door where he was sitting. The parking space right next to the car was empty.

33. Grier knew Franklin from his coming often to the store to see the mother of his children, frequently with one or more of their children.

34. When Franklin saw Grier pull up in his car, he rushed outside to talk to him, gesturing with his arms and pointing back at the store, telling Grier in anguish that the mother of his children had brought the co-worker to his house.

35. Grier talked to Franklin and quickly calmed him, telling him to not make matters worse. Franklin squatted down next to the car, close to Grier in the open door. Grier, who is an ordained minister, invited Franklin to pray with him.

36. As they prayed, Franklin laid his head on Grier's chest and started to cry. The mother of his children and at least one other Burger King employee had followed Franklin out of the store and then came and stood closer, watching the two men pray. No one felt threatened in any manner.

37. As Deal led Kerl toward the Burger King, a CMPD spotter watching the area through a surveillance camera in a tower nearby told them that the person with the gun had walked out of the store and was next to a specific car in the parking lot.

38. Deal stopped his CMPD vehicle near the rear of Grier's car, turning it at an angle. He got out of his vehicle, stood behind his open car door and, pointing his gun but unable to see the squatted Franklin well, yelled at Franklin twice to show his hands.

39. Kerl stopped her vehicle behind Deal's and, far from where Franklin could see or hear her, also yelled to Franklin to show his hands as she rushed towards Grier's car.

40. Franklin lifted his head off of Grier's chest and froze in his squatted position, his hands still clasped from praying.

41. Contrary to common sense and common training, Kerl crossed in front of Deal and stopped in a completely uncovered position just beyond the parking space between Grier's car and the other vehicle, pointing her gun at Franklin. Kerl was not wearing her ballistic vest. All of these movements and her perspective and position can be seen from her body camera and from the video from the CMPD tower camera.

42. Reflexively, Deal moved up to the rear of Grier's vehicle and pointed his gun at Franklin in an effort to provide some cover to the fully exposed Kerl. On information and belief, he was shocked at Kerl's actions and how she escalated the situation.

43. Once they could fully see Franklin, however, neither officer asked or ordered him to show his hands again.

44. Instead, Kerl and Deal repeatedly and loudly ordered Franklin to "drop the weapon" - doing so more than 20 times in less than 30 seconds.

45. The weapon was inside Franklin's clothing. Franklin appeared dazed and uncertain as to how to respond. He looked over towards Kerl and back at Grier. He said at one point, I heard you the first time.

46. As they shouted these orders, Grier's wife quickly exited the car, but the two Burger King employees actually moved closer to Franklin; the mother of his children walked right up to the edge of the open car door and stood close behind him to try to talk to him. The two employees had no fear of Franklin. The officers had to order the mother of his children to move away. Both employees went back inside the store and watched.

47. Grier quietly urged Franklin not to do anything "stupid". He then watched as Franklin slowly unclasped his hands, which the officers could now see were empty, as shown on the video, and slowly reached into his clothing to retrieve the pistol, as ordered.

48. Kerl's video shows Franklin slowly brought the gun out of his clothing, holding the top of the gun by his thumb and forefinger, with the barrel pointed *toward him* and the handgrip coming into view first.

49. Kerl now yelled "gun" as Franklin moved the gun away from him and from Kerl toward his right knee and then towards the ground, trying to put the gun down as ordered.

50. Kerl then shot Franklin twice as he was putting the gun down. The video shows the smoke come from the barrel of her gun as Franklin's hand was past his knee and moving toward the ground.

51. Franklin slumped against the open car door and looked at Kerl with an expression of shock and bewilderment on his face and said, you told me to - his last words.

52. On information and belief, Deal was shocked that Kerl had shot Franklin and had not felt threatened by Franklin's obedient, slow movement of the gun.

53. The video also shows the shock on Grier's face after Franklin was shot. And the mother of his children can be heard screaming shrilly in the background.

54. Neither officer attempted any first aid to stop Franklin's bleeding, focusing only on retrieving the gun. Franklin lay unattended at least eight minutes before any first aid was attempted by paramedics. He died at the scene.

55. When Plaintiff arrived from the bus to gather her grandchildren she found lots of police and her son in a body bag.

56. In the next days, in response to public questions about the shooting, the CMPD Chief stated that he wished he had heard different commands from the two officers.

57. The District Attorney, based on information provided to him by CMPD and expressly declining to consider whether Kerl had violated police procedures, decided in September 2019 not to charge Kerl.

58.     After days of media coverage of his decision, the District Attorney announced that all future reviews of the use of deadly force by CMPD would be conducted for his office by the State Bureau of Investigation, and not by CMPD.

59.     Shortly thereafter, the CMPD sent Plaintiff a letter stating that its internal affairs review had found the shooting justified, based on the District Attorney's decision.

60.     Plaintiff appealed the CMPD decision to the City's Citizen Review Board ("CRB"), a body organized pursuant to a City ordinance to review use of force by CMPD officers.  The CRB voted unanimously that the shooting was not justified and recommended that the Chief change his finding.

61.     The Chief declined to change his decision, and the City Manager, the final policymaker for the use of deadly force by CMPD officers, upheld the Chief's decision, finding that Kerl's actions were consistent with CMPD training and justified because the District Attorney had not charged her with a crime.

## **FIRST CAUSE OF ACTION**
(Fourth Amendment – 42 U.S.C. § 1983 - Defendant Kerl)

62.     Plaintiff incorporates by reference all prior allegations.

63.     The use of deadly force by Defendant Kerl was unreasonable and excessive under the circumstances detailed above - including her failure to follow settled principals for remaining safe in such a situation and then shooting Franklin *because* he was obeying her repeated commands to put down his pistol - and thus violated Decedent's Fourth Amendment right not to be subject to unreasonable seizures, including the application of excessive force.

64.     Defendant Kerl was at all times acting under color of state law for purpose of 42 U.S.C. §1983.  She is sued in her individual capacity on this claim

65.     Plaintiff seeks and is entitled to all available compensatory damages for the Decedent's loss of life, the loss of financial and emotional support for his child, the pain and suffering he experienced in his needless death, and all other losses compensable under N.C.G.S. § 28A-18-2(b).

66.     Plaintiff seeks punitive damages for the willful and wanton and reckless conduct of Defendant Kerl.

67.     Plaintiff also seeks her costs in this action, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
(Fourth Amendment – 42 U.S.C. § 1983 - Defendant City of Charlotte)

68.     Plaintiff incorporates by reference all prior allegations.

69.     Under the City Charter and ordinances, the City Manager is the final policymaker for assessing the use of deadly force, to the extent he has not delegated such decisions to the Chief of Police. Both the City Manager and Chief of Police fully ratified the actions of Defendant Kerl in killing Franklin and her reasons for killing him. Thus, the City is also liable to Plaintiff for the violation of Franklin's Fourth Amendment rights.

70.     The City's final policymakers at all times acted under color of state law for purposes of 42 U.S.C. § 1983. The claim against the City is the same as and redundant to an official capacity claim against Kerl.

71.     Plaintiff seeks and is entitled to all available compensatory damages for the Decedent's loss of life, the loss of financial and emotional support for his child, the pain and suffering he experienced in his needless death, and all other losses compensable under N.C.G.S. § 28A-18-2(b).

72.     Plaintiff does not seek punitive damages from the City, as they are not available under § 1983.

73.     Plaintiff seeks the costs of this action, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION
(Wrongful Death – the City and Kerl in her official capacity)

74.     Plaintiff incorporates by reference all prior allegations.

75.     The actions of Defendant Kerl in shooting and killing Decedent breached the duty of care owed to Decedent by a reasonable officer in the circumstances and thus were negligent.

76.     Defendant Kerl was negligent in failing to take cover at the scene, in crossing in front of an officer whose weapon was drawn and standing fully exposed to a person she suspected of holding a handgun and escalating an situation that had fully de-escalated; in failing to communicate effectively with Franklin, not hearing his response that acknowledged her commands, and in not issuing commands commonly used to safely detain an armed person and secure a weapon, such as in a felony vehicle stop; and then shooting and killing Franklin *because* he was following the errant commands she gave.

She panicked when she saw the handle of the gun emerge from his clothing, and shot him as he held the gun with only his thumb and forefinger, the barrel pointed toward him as he was putting the gun to the ground. Kerl failed utterly to recognize that Franklin was doing exactly what she ordered him to do when she shot him dead, and then she failed to attempt any life saving measures.

77. To the extent the City claims that Franklin was contributorily negligent, he clearly was in a position of peril from which he could not escape when shot. Defendant Kerl had the last clear chance to avoid Decedent's death.

78. Plaintiff, in her capacity as Administrator of the Estate, seeks and is entitled to recover all damages for wrongful death allowed by N.C.G.S. § 28A-18-2(b), including punitive damages for willful and wanton conduct of Defendant Kerl under N.C.G.S. § 28A-18-2(b)(5).

79. Defendant Kerl is sued in her official capacity on this negligence claim for wrongful death. She was acting as an agent of the City of Charlotte which is liable for her official conduct as *respondeat superior*.

80. The Defendant City of Charlotte, pursuant to N.C.G.S. § 160A-485.5, has adopted an ordinance waiving its governmental immunity from claims of negligence byt its employees to the same extent that sovereign immunity is waived under the State Tort Claims Act for claims of negligence against state employees. If Kerl were a state employee, her negligence would be actionable under the State Tort Claims Act. Thus, her negligence is actionable here. The waiver is limited to $1 million in damages.

81. Plaintiff, in her capacity as Administrator of the Estate, seeks and is entitled to recover all damages for wrongful death allowed by N.C.G.S. § 28A-18-2(b), including punitive damages for willful and wanton conduct of Defendant Kerl under N.C.G.S. § 28A-18-2(b)(5). That provision applies to municipalities.

82. Plaintiff also seek the recoverable costs of this action.

## FOURTH CAUSE OF ACTION
(Negligent Training - City of Charlotte)

83. All prior allegations are incorporated by reference.

84. The City has a duty to maintain the training and readiness of its CMPD officers to reasonably respond to situations like the one in this case.

85. The City Manager and Chief have declared that Kerl's training was adequate and she acted in conformity with it. The failure to keep Kerl trained in the proper procedures for responding to an incident such as this was manifest in her negligent actions.

86. Kerl was negligent in all the ways described in paragraph 76 and would not have acted in the manner she did if properly and regularly trained in the many years since basic training.

87. This negligent training proximately caused the death of Decedent.

88. The Defendant City, pursuant to N.C.G.S. § 160A-485.5, has adopted an ordinance waiving its governmental immunity from the negligence of its employees to the same extent that sovereign immunity is waived under the State Tort Claims Act as to the negligence of state employees. The negligence of its police department in mantling Kerl's training is actionable here because of that waiver of immunity to the limits of the State Tort Claims Act.

89. Plaintiff, in her capacity as Administrator of the Estate, seeks and is entitled to recover all damages, compensatory and punitive, for wrongful death caused by the negligent training, as allowed under N.C.G.S. § 28A-18-2(b)

## **FIFTH CAUSE OF ACTION**
(Assault and Battery)

90. All prior paragraphs are incorporated by reference.

91. In the alternative, the unjustified actions of Kerl in intentionally shooting and killing Decedent without legal justification constitutes assault and battery.

92. The shooting caused Decedent's wrongful death.

93. Defendant Kerl is sued in her individual capacity on this claim. Her unjustified actions displayed willful and wanton disregard of Decedent's rights and well-being and exceeded the scope of her lawful authority, thereby piercing any entitlement to public officer immunity.

94. Plaintiff, in her capacity as Administrator of the Estate, seeks and is entitled to recover all damages for wrongful death allowed by N.C.G.S. § 28A-18-2(b)

95. She also seeks punitive damages for the willful and wanton conduct of Defendant Kerl under N.C.G.S. § 28A-18-2(b)(5).

10
Case 3:20-cv-00330-GCM   Document 1   Filed 06/11/20   Page 10 of 11

## JURY DEMAND

96. Plaintiff requests that all matters be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, upon the trial of this matter, Plaintiff prays that the Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

1. An award to Plaintiff as administrator of the Estateof all damages, compensatory and punitive, from the City and officer Kerl officially, allowed by statute for wrongful death under state law;

2. An award to Plaintiff as administrator of the Estate of all damages, compensatory and punitive, from officer Kerl individually, and from the City, for the violation of the Fourth Amendment,;

3. Interest at the state statutory rate on each of the Judgments for Plaintiff as administrator and for herself;

4. The costs and expenses in this action as allowed by statute, including reasonable attorneys; fees under 42 U.S.C. § 1988; and

5. Such further relief as the Court deems just and necessary.

This the 11th day of June, 2020.

    **/s/ S. Luke Largess,**
    S. Luke Largess
    N.C. Bar No. 17486
    Tin Fulton Walker & Owen, PLLC
    Phone: (704) 338-1220
    Facsimile: (704) 338-1312
    llargess@tinfulton.com
    *Attorneys for Plaintiff*